UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

SEVGINAR KERIM

                Plaintiff,

-v-

CANADIAN CONSULATE GENERAL
IN NEW YORK CITY
                Defendant,

FOR A JUDGEMENT PURSUANT TO THE SOVEREIGN
IMMUNITIES ACT 28 U.S. CODE § 1605(a) (5).

-----------------------------------------------------------X

**File NO:**

**VERIFIED COMPLAINT**

Plaintiff, **Sevginar Kerim**, appearing Pro Se, complaining of the defendant, respectfully alleges and sets forth as follows:

### AS AND FOR A FIRST CAUSE OF ACTION

1. At all times hereinafter mentioned plaintiff, **Sevginar Kerim**, resides at 390 Ocean Pkwy Apt. 1C, Brooklyn, New York 11218.

2. At all times hereinafter mentioned plaintiff, **Sevginar Kerim**, was employed by ABM Industries Inc. (hereinafter ABM) and RXR Realty LLC. (hereinafter RXR) in the position of cleaning porter at an office building located at 237 Park Avenue, New York, New York 10017, from November 28, 2018, to November 1, 2024.

3. At all times hereinafter mentioned plaintiff, **Sevginar Kerim**, was assigned to the 19th and 20th Floors at 237 Park Avenue, New York, New York 10017 from the beginning of her employment until approximately August of 2021, the relevant period covered in Plaintiff's Verified Complaint.

4. Upon information and belief, at all times hereinafter mentioned defendant, **Canadian Consulate General in New York City** (hereinafter **CCG**) had a secondary location at 237 Park Avenue, 19th and 20th Floors, New York, New York 10017. During the relevant period covered in Plaintiff's Verified Complaint.

5. Upon information and belief, at all times hereinafter mentioned, **Audrey V. Fansworth** was employed and/or supervised by defendant **CCG** in the capacity of Human Resource Director, for the relevant period covered in Plaintiff's Verified Claim.

6. Upon information and belief, at all times hereinafter mentioned, **Lindsay Burleson** was employed and/or supervised by defendant **CCG** in the capacity of Property Manager, for the relevant period covered in Plaintiff's Verified Complaint.

7. Upon information and belief, at all times hereinafter mentioned, **Raphael Vibar** was employed and/or supervised by defendant **CCG** in the capacity of Assistant Property Manager, for the relevant period covered in Plaintiff's Verified Complaint.

8. Upon information and belief, at all times hereinafter mentioned, **Patricia Brown** was employed and/or supervised by defendant **CCG** in the capacity of Counselor of Migration, for the relevant period covered in Plaintiff's Verified Complaint.

9. Upon information and belief, at all times hereinafter mentioned, **Louise Blais** was employed and/or supervised by defendant **CCG** in the capacity of Permanent Representative, for the relevant period covered in Plaintiff's Verified Complaint.

10. Upon information and belief, the defendant, **CCG**, being a consulate, is not entitled to diplomatic immunity "in which money damages are sought for personal injury occurring in the United States and caused by the tortious act or omission of that foreign state or any official or employee of that foreign state while acting within the scope of his/her office employment" and is therefore subject to the jurisdiction of this court, 28 U.S. Code § 1605 (a) (5).

11. Upon information and belief, the defendant **CCG**, owed a compulsory duty to provide Plaintiff with a workplace free from harassment and discrimination.

12. Upon information and belief, the defendant **CCG**, owed a compulsory duty to Plaintiff to enforce workplace policies that discourage hostile behavior.

13. Upon information and belief, the defendant **CCG**, owed a compulsory duty to Plaintiff to conduct prompt and fair investigations.

14. Plaintiff's duties consisted of cleaning and sanitizing the many offices, restrooms, and common areas on the 19th and 20th floors.

15. Shortly after Plaintiff began her employment, on or about March 2019, a new supervisor, Mirsada Damms, was hired by ABM and Plaintiff was placed under her supervision.

16. Almost immediately after the arrival of Mirsada Damms, Plaintiff began to experience interpersonal challenges and behaviors in the workplace that multiplied and expanded over the relevant period in Plaintiff's Verified Complaint.

17. Other employees with supervisory powers and Plaintiff's coworker(s) became part of a systematic harassment campaign initiated by ABM's supervisor, Mirsada Damms.

18. The behaviors alleged by Plaintiff are supported by records in the possession of Plaintiff, Defendant, and administrative reporting agencies, and are as follows:

   a) Requesting personal grooming services from Plaintiff during work hours.

   b) Requesting upper body massages from Plaintiff during work hours.

   c) Requesting that Plaintiff cook and provide homemade meals.

   d) Demands that Plaintiff perform other employees' work chores.

   e) Substantial increases in Plaintiff's workload.

   f) Sabotaging Plaintiff's chores to appear as if they were not performed.

   g) False accusations against Plaintiff regarding missing items.

   h) Supervisor(s) exhibiting partiality against Plaintiff during coworker disputes.

   i) Derogatory comments made about and towards Plaintiff.

   j) White and Russian slurs directed at Plaintiff.

   k) Removing Plaintiff from favorable work shifts.

   l) Not awarding Plaintiff earned sick days.

   m) Not awarding Plaintiff earned vacation days.

   n) Disciplinary retaliation against Plaintiff.

   o) Threatening language and behavior towards plaintiff.

   p) Denying or excluding Plaintiff from rewarding opportunities and events.

   q) Subjecting Plaintiff to humiliation and embarrassment.

   r) Defendant's male employees ignoring "Closed for Cleaning" signage and entering and using the restroom while Plaintiff performed her cleaning duties.

   s) Refusing to assign available male employee to clean male assigned restrooms.

19. The record will indicate that the pervasive ongoing behaviors set forth in ¶ 18 a-s were frequent and expanded throughout the relevant period covered in Plaintiff's Verified Complaint.

20. The pervasive and prolonged harassment and abuse inflicted upon Plaintiff outlined in ¶ 18 a-s were unwanted, uninvited, and rejected by Plaintiff.

21. The pervasive and prolonged harassment and abuse inflicted upon Plaintiff outlined in ¶ 18 a-s negatively impacted Plaintiff's ability to perform her job responsibilities due to the preoccupation, intimidation, and conditioned expectation of being targeted by individuals employed and/or supervised by Defendant.

22. The pervasive and prolonged harassment and abuse inflicted upon Plaintiff outlined in ¶ 18 a-s resulted in a textbook hostile work environment.

23. The pervasive and prolonged harassment and abuse inflicted upon Plaintiff outlined in ¶ 18 a-s originated from and was sustained by the discriminatory misconception that Plaintiff is Russian (Plaintiff's national origin is Bulgaria), a nation historically hostile towards the United States and its allies.

24. For the relevant period covered in Plaintiff's Verified Complaint, the primary tenant at Plaintiff's workplace was the **CCG** and international relationships was a common and pervasive theme with "Friend or Foe?" being the consequential question.

25. The pervasive and prolonged harassment and abuse inflicted upon Plaintiff outlined in ¶ 18 a-s originated and was sustained by discrimination of plaintiff's gender.

26. Plaintiff took reasonable care to prevent the continued harassing and abusive behaviors outlined in ¶ 18 a-s.

27. Plaintiff's reasonable care to prevent the continued harassing and abusive behaviors outlined in ¶ 18 a-s included but was not limited to the following:

   a) Being assertive in expressing discomfort to those perpetrating hostile behaviors towards Plaintiff.

   b) Taking advantage of opportunities to physically separate and avoid coworkers and staff being hostile towards Plaintiff.

   c) Articulating that Plaintiff is not of Russian origin.

   d) Calling out the day after a major confrontation to allow time for de-escalation.

   e) Requesting informal intervention meetings with staff.

28. In addition to the reasonable care to prevent continued harassing and abusive behaviors outlined in ¶ 27 a-e., Plaintiff took advantage of internal preventive means.

29. Plaintiff's interaction with internal preventive means included but is not limited to the following:

   a) Filing informal and/or formal complaints with **Lindsay Burleson**, Property Manager of **CCG**.

   b) Filing informal and/or formal complaints with **Raphael Vibar**, Assistant Property Manager of **CCG**.

   c) Filing informal and/or formal complaints with **Audrey V. Fansworth**, Human Resource Director for **CCG**.

   d) Filing informal and/or formal complaints with **Patricia Brown**, Consul of Migration for **CCG**.

   e) Filing informal and/or formal complaints with **Louise Blais**, Deputy Permanent Representative for **CCG**.

30. In addition to the reasonable care to prevent continued harassing and abusive behaviors outlined in ¶ 27 a-e and Plaintiff's interaction with internal preventive means outlined in ¶ 29 a-e, Plaintiff took advantage of external preventive means.

31. Plaintiff's interaction with external preventive means included but is not limited to the following:

    a) Filing formal complaint with the New York State Department of Labor.

    b) Filing formal complaints with the New York State Division of Human Rights.

    c) Filing formal complaints with the Equal Employment Opportunity Commission.

    d) Filing formal complaints with Labor Union 32BJ SEIU.

    e) Filing formal complaint with the National Labor Relations Board.

32. Plaintiff's experience in attempting to prevent the continued harassing and abusive behavior outlined in ¶ 29 a-e by placing Defendant on notice and requesting immediate action, met with dismal and indifference results.

33. Plaintiff's experience in attempting to prevent the continued harassing and abusive behaviors outlined in ¶ 31 a-d by further placing Defendants on notice and requesting immediate action, met with dismal and indifferent results.

34. Despite being placed on notice by Plaintiff's preventive means outlined in ¶¶ 29, 31, Defendant breached its duty to provide Plaintiff with a workplace free from harassment and discrimination, a conduct not part of its official consular functions.

35. Despite being placed on notice by Plaintiff's preventive means outlined in ¶¶ 29, 31, Defendant breached its duty to enforce workplace policies that discourage hostile behavior, a conduct not part of its official consular functions.

7

36. Despite being placed on notice by Plaintiff's preventive means outline in ¶¶ 29, 31, Defendant breached its duty to conduct prompt and fair investigations into Plaintiff's allegations, a conduct not part of its official consular functions.

37. Despite being placed on notice by Plaintiff's preventive measures outlined in ¶¶ 29, 31, Defendant breached its duty to comply with long standing Federal and State Civil Rights Laws and Due Process Rights enshrined in the U.S., Constitution.

38. As a result of Defendant's breach of duty set forth in ¶¶ 34-37, Plaintiff suffered ongoing, pervasive, discriminatory treatment in an intimidating, hostile, and abusive working environment.

39. As a result thereof, Plaintiff endured pain and suffering, emotional distress, humiliation, and loss of enjoyment of life.

40. As a result thereof, Plaintiff incurred medical expenses for hospitalization and medications.

41. As a result thereof, Plaintiff lost income for rejection of earned sick and vacation time, stress induced absences, and promotion stagnation.

**WHEREFORE,** Plaintiff demands judgment against the Defendant, in such a sum as the Court and/or jury may find to be fair, adequate and just, and for cost and disbursements of this action, that this Court apply liberal construction to Plaintiff's Pro Se Verified Complaint, that this Court appreciate the complexity of Plaintiff's Verified Complaint and hold it to less stringent standards to that of a licensed attorney, and such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York

*December 02*, 2024

                                        Respectfully submitted,

                                        *Sevginar Kerim*
                                        Sevginar Kerim,
                                        390 Ocean Pkwy
                                        Apt. 1C
                                        Brooklyn, NY 11218
                                        (917) 715-7093
                                        Email: mk2015@hotmail.com
                                        PRO SE