**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

Sevginar Kerim,

    Plaintiff,

      –against–

**Government of Canada**

(His Majesty the King in Right of Canada),

acting through its Consulate General

in New York, United States of America,

      Defendant.

-------------------------------------------------------------------X

**File No: 24-CV-09178**

## AMENDED VERIFIED COMPLAINT

(Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–1611; Title VII; NYSHRL)


## INTRODUCTION

1. Plaintiff **Sevginar Kerim**, appearing *pro se*, brings this action against the **Government of Canada, acting through its Consulate General in New York** ("Consulate" or "CCG") for **sexual harassment, gender discrimination, national-origin discrimination, retaliation, and negligent supervision** arising from events that occurred inside the Consulate's leased premises at 237 Park Avenue / 466 Lexington Avenue (20th Floor), New York, NY, between 2019 and 2021.

1

2.  All wrongful acts occurred within the United States and in the course of the Consulate's **commercial employment and premises-management activity**, not in the exercise of any sovereign or diplomatic function.

3.  Plaintiff therefore invokes the **Foreign Sovereign Immunities Act (FSIA)**, 28 U.S.C. §§ 1330(a), 1605(a)(2), and (5). Jurisdiction is also proper under **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. § 2000e et seq., and the **New York State Human Rights Law**, N.Y. Exec. Law § 290 et seq.

4.  This complaint is brought **solely against the Government of Canada**, the foreign state responsible for the Consulate's operations. Plaintiff has filed a separate federal action, No. 24-CV-5599 (S.D.N.Y.), against her domestic employers (ABM Industries Inc.(ABM) and RXR Realty LLC (RXR) and her union (SEIU Local 32BJ); those entities are **not defendants here**.

## JURISDICTION AND VENUE

5.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1330(a), and § 1605(a)(2) and (5) because the conduct complained of constitutes **commercial activity carried on in the United States by a foreign state** and **tortious acts causing personal injury within the United States**.

6.  Venue is proper under 28 U.S.C. § 1391(f)(1) because the Consulate General of Canada in New York is located, and the events occurred, in this District.

7.  Defendant is a "foreign state" within the meaning of 28 U.S.C. § 1603(a). Its Consulate General in New York acted as its instrumentality in operating and supervising the premises at 237 Park Avenue / 466 Lexington Avenue (20th Floor), New York, New York.

8. Plaintiff has **exhausted all available administrative and state remedies**. She filed complaints with the **New York State Division of Human Rights** in January 2022 and supplemented them in 2023 (Ex. C113 - Canadian Consulate Incidents Report, referenced here for context only and not attached to this pleading); the Division declined jurisdiction because Defendant is a foreign state. A later petition in the New York Supreme Court was also dismissed for lack of jurisdiction. Plaintiff now properly invokes this Court's jurisdiction under the FSIA.

**8A.** Because the Defendant is a foreign state not subject to the administrative jurisdiction of the U.S. Equal Employment Opportunity Commission, Plaintiff was **not required to obtain a Right-to-Sue letter** before filing this action. Under **42 U.S.C. § 2000e-5(f)(1)**, an EEOC Right-to-Sue letter is a prerequisite only for employers within the Commission's jurisdiction, and the **EEOC expressly lacks authority over foreign sovereigns** and their diplomatic missions. See *42 U.S.C. § 2000e-1(b)* (exempting employment by a foreign state from EEOC enforcement) and *Kato v. Ishihara*, 360 F.3d 106, 110-11 (2d Cir. 2004) (holding that administrative exhaustion under Title VII does not apply where the EEOC lacks jurisdiction over a foreign state). Plaintiff nonetheless **exhausted all available domestic remedies** by filing a complaint with the **New York State Division of Human Rights (NYSDHR)** in January 2022. The NYSDHR advised Plaintiff that, because the Canadian Consulate is a foreign government, the Division **lacked jurisdiction** and directed her to seek review in the **Supreme Court of the State of New York**. Acting on that instruction, Plaintiff **filed an appeal in the Supreme Court**, which likewise dismissed for lack of jurisdiction and further **advised Plaintiff to pursue relief in federal court.** Accordingly, Plaintiff has **fully satisfied all exhaustion requirements** and now properly brings this action under the **Foreign**

**Sovereign Immunities Act**, 28 U.S.C. §§ 1330 and 1605. Plaintiff's state and common-law claims are timely under the three-year limitations period, tolled during NYSDHR and state-court proceedings.

## PARTIES

9. **Plaintiff Sevginar Kerim** resides in Brooklyn, New York, and was employed as a cleaning porter by ABM Industries Inc. and RXR Realty LLC, assigned to 237 Park Avenue / 466 Lexington Avenue (20th Floor), New York, NY, from November 2018 to December 19, 2024.

10. **Defendant, Government of Canada**, acting through its Consulate General in New York, leased and controlled the 19th and 20th floors of that building and supervised the custodial personnel working there.

11. During Plaintiff's assignment, Consulate officials **Lindsay Burleson (Property Manager)** and **Raphael Vibar (Assistant Property Manager)** directed her daily tasks and evaluated her work. Other Consulate officials included **Audrey Farnsworth (HR Director)** and **Patricia Brown (Counselor of Migration)**, each of whom had responsibility for maintaining a safe workplace and were repeatedly informed of the harassment and discrimination alleged herein.

12. References to ABM Industries Inc., RXR Realty LLC, and SEIU Local 32BJ are included only for context; those entities are **not parties to this action** and are defendants in Plaintiff's separate case No. 24-CV-5599.

## FACTUAL ALLEGATIONS

13. From November 2018 until August 2021, Plaintiff was assigned by her employers, ABM Industries Inc. and RXR Realty LLC, to perform custodial services on the 19th and 20th floors of 237 Park Avenue, space leased and occupied by the **Consulate General of Canada**.

14. Although ABM and RXR processed payroll and schedules, the **Canadian Consulate** exercised day-to-day supervision and operational control. Consulate management—**Property Manager Lindsay Burleson** and **Assistant Property Manager Raphael Vibar**—issued Plaintiff's daily instructions, inspected her work, and had authority to approve or reject performance.

15. Because the 19th and 20th floors were secure diplomatic areas, **ABM and RXR supervisors were not authorized to enter**; they lacked the required Canadian-government security clearances. Plaintiff, having **passed the Consulate's own background and security screening**, was one of the custodial workers permitted to enter and therefore received **all supervision directly from Burleson and Vibar**. Her performance, assignments, and safety oversight came exclusively from the Consulate, making it her **de facto joint employer**.

16. Once workers entered the Consulate floors, **only Consulate officials** were in charge. Burleson and Vibar delivered all instructions, approved completed work, and relayed operational directions because ABM and RXR managers were barred from the premises. The Consulate thus had **exclusive on-site managerial authority** and full knowledge of daily conditions.

17. Beginning in August 2019, male Consulate staff and visitors **repeatedly entered the men's restrooms while Plaintiff was cleaning**, ignoring "Closed for Cleaning / Do Not Enter" signage and a cleaning cart blocking the doorway.

18. On multiple occasions the men **used the urinals next to Plaintiff, separated only by a small partition**, while she was cleaning. Urine splashed onto her shoes and uniform, causing humiliation, shock, and emotional distress.

19. During one such incident, a male diplomat told Plaintiff, *"You can stay with me, no problem,"* confirming the conduct was intentional and sexual in nature.

20. During one such incident, a male diplomat told the Plaintiff, "You can stay with me, no problem," a statement made deliberately and intended in a sexual manner.

21. These humiliating intrusions continued for nearly two years. Each occurred inside the Consulate's controlled premises, where Consulate management was responsible for privacy and safety.

22. **Counselor Patricia Brown** frequently entered the restrooms during cleaning, observed the conditions, asked whether "the problems were solved," and remarked, *"Oh, this is no good."* Despite witnessing the harassment, she took no corrective measures.

23. Plaintiff also reported the intrusions to **Burleson** and **Vibar**, who acknowledged her complaints but failed to restrict access, adjust schedules, or discipline offenders.

24. **HR Director Audrey Farnsworth** was likewise informed and expressed surprise that ABM retained the supervisor responsible, yet the Consulate took no action.

25. The Consulate's failure to act allowed the harassment to continue until **August 2021**, when Plaintiff was abruptly removed from the Consulate floors.

26. After Plaintiff's repeated reports to the Consulate and ABM and RXR Supervisors, she was **removed from the Consulate floors** and reassigned by ABM and RXR to a **night-shift position** elsewhere in the building.

27. The reassignment reduced her visibility and daytime hours and was perceived as a demotion. No legitimate reason was given.

28. The timing and circumstances show the transfer was **retaliation** for her protected complaints.

29. From September 2021 through December 19, 2024, Plaintiff continued working nights under ABM and RXR supervision.

30. On **December 19, 2024**, Plaintiff was terminated by **ABM Industries Inc. and RXR Realty LLC**, continuing the same retaliatory pattern that began with her removal from the Consulate floors.

    Just **seventeen days earlier, on December 2, 2024**, Plaintiff had filed the present federal action (**Case No. 24-CV-09178**) against the **Government of Canada**, acting through its **Consulate General in New York**, which occupied the 19th and 20th floors of the building as an **RXR tenant**.

    Plaintiff's termination by ABM and RXR occurred immediately after the Consulate—RXR's own tenant—was formally named in this federal lawsuit, further demonstrating coordination and retaliation linked to Plaintiff's protected activity in both actions.

31. In January 2022, Plaintiff filed a formal complaint against the Canadian Consulate with the **New York State Division of Human Rights (NYSDHR)** describing harassment and discrimination occurring on the Consulate floors (2019–2021).

32. In 2023, she submitted a detailed written report titled **"Canadian Consulate Incidents" (Exhibit C113)** to the NYSDHR, the EEOC, and other agencies. Plaintiff retains email confirmations showing the submissions were received.

33. The NYSDHR issued notice that it **lacked jurisdiction** because the Consulate is a foreign government and directed her to seek judicial relief.

34. Plaintiff then filed a complaint in the **Supreme Court of the State of New York**, which likewise dismissed for lack of jurisdiction.

35. Having exhausted internal, union, administrative, and state remedies, Plaintiff now properly seeks relief in this Court under the FSIA.

36. As a result of Defendant's conduct, Plaintiff suffered:

    (a) severe emotional distress and humiliation;

    (b) physical contamination and health effects;

    (c) medical expenses for stress treatment;

    (d) loss of income, vacation, and sick-time benefits; and

    (e) harm to her professional reputation.

37. Defendant's acts and omissions were **intentional, reckless, and outrageous**, taken with deliberate indifference to Plaintiff's safety and rights, and fall within the **commercial-activity** and **tort** exceptions of the FSIA.

## COUNT I — SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

*(Title VII; NYSHRL — FSIA Commercial-Activity Exception 28 U.S.C. § 1605(a)(2))*

38. Plaintiff repeats and realleges paragraphs 1 through 37 as if fully set forth herein.

39. Defendant, the **Government of Canada acting through the Consulate General of Canada in New York**, functioned as Plaintiff's **joint employer** and exercised **direct control** over her working conditions inside the Consulate premises.

40. Because ABM and RXR supervisors lacked the Canadian-government security clearances required to enter the Consulate, they were prohibited from monitoring Plaintiff's work. Plaintiff, having passed the Consulate's own background investigation, was one of the custodial employees authorized to enter and was therefore **supervised exclusively by Property Manager Lindsay Burleson and Assistant Property Manager Raphael Vibar**, and later by Florence Gaudrey, who assigned daily duties, inspected completed areas, and controlled workplace safety.

41. Between **August 2019 and August 2021**, male Consulate staff and visitors repeatedly **entered and used the men's restrooms while Plaintiff was cleaning**, ignoring the "Closed for Cleaning / Do Not Enter" signage and the cleaning cart blocking the doorway.

42. On multiple occasions the men **urinated in the urinals next to Plaintiff, separated only by a thin partition**, while she stood a few feet away performing her assigned duties. Urine splashed onto her shoes and uniform, causing humiliation and distress.

43. During one such incident, a male diplomat looked directly at Plaintiff and stated, *"You can stay with me, no problem,"* confirming the intentional and sexual nature of the conduct.

44. Senior Consulate personnel—including **Lindsay Burleson**, **Raphael Vibar**, **HR Director Audrey Farnsworth**, and **Counselor of Migration Patricia Brown**—were repeatedly notified of these incidents.

**Patricia Brown** personally witnessed the conditions, asked whether "the problems were solved," and remarked, "Oh, this is no good," yet no corrective measures were implemented.

**ABM Industries Inc.** and **RXR Realty LLC** were likewise notified of the restroom intrusions and harassment before these reports reached the Consulate, but despite being

aware of the situation, **neither company took any corrective or protective action**, and the unsafe and humiliating conditions continued.

45. Despite this notice, Defendant failed to enforce restroom-closure procedures, restrict access, or discipline the offenders. This indifference permitted the harassment to continue unchecked for nearly two years.

46. The conduct was **unwelcome**, **based on sex**, and **so severe and pervasive** that it altered the terms and conditions of Plaintiff's employment, creating a humiliating, unsafe, and hostile work environment.

47. These acts occurred entirely within the United States, during the Consulate's **commercial operation and supervision of its premises and contracted personnel**. Accordingly, they constitute **commercial activity under FSIA § 1605(a)(2)** and are not protected by sovereign immunity.

48. By failing to prevent or remedy this harassment, Defendant violated **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**, and the **New York State Human Rights Law, N.Y. Exec. Law § 296**, which require employers to maintain a workplace free from sex-based harassment.

49. As a direct and proximate result, Plaintiff suffered **emotional distress, physical contamination, humiliation, medical expenses, and economic loss**, including unpaid sick and vacation benefits and other compensable injuries.

50. The Consulate's failure to implement restroom-safety procedures was an operational lapse, not a diplomatic or discretionary function.

## COUNT II — RETALIATION

*(Title VII; NYSHRL — FSIA Commercial-Activity Exception, 28 U.S.C. § 1605(a)(2))*

51. This Count arises under 42 U.S.C. § 2000e-3(a), and N.Y. Exec. Law § 296(7). Plaintiff repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

52. Beginning in **late 2019** and continuing through **2021**, Plaintiff repeatedly engaged in **protected activity** by reporting sexual harassment, unsafe restroom conditions, and gender-based mistreatment through every available internal and external channel.

53. Plaintiff first complained to her **ABM and RXR supervisors**, including **on-site forelady and Mirsada Damms**, explaining that male employees were entering the restrooms while she cleaned, ignoring "Closed for Cleaning / Do Not Enter" signs, and causing humiliation. Instead of investigating, **Damms** mocked Plaintiff's distress, telling her: "Don't cry — go clean the bathrooms."

This dismissive and retaliatory response left Plaintiff intimidated but did not deter her from continuing to seek help.

54. When no corrective action followed and the harassment continued, Plaintiff **escalated her complaints to Canadian Consulate officials**—including **Property Manager Lindsay Burleson**, **Assistant Property Manager Raphael Vibar**, **Counselor of Migration Patricia Brown**, and **Human Resources Director Audrey Farnsworth**—describing the same incidents and requesting protection. Each official acknowledged receiving her reports yet failed to implement any safety or disciplinary measures.

55. Each of these complaints opposed conduct that constitutes **unlawful sexual harassment and unsafe working conditions** prohibited by **Title VII** and the **New York State Human Rights**

**Law**, and each was made in **good faith** based on Plaintiff's firsthand experience. Defendant and its agents therefore had **actual notice** of Plaintiff's protected activity well before her removal from the Consulate floors.

56. Even after Plaintiff complained to **ABM, RXR, and the Consulate**, **no improvements** were made. Instead, **Property Manager Lindsay Burleson** told Plaintiff that she should *"go talk to them yourself,"* referring to the men entering the restrooms. Plaintiff replied that **it was not her responsibility** to confront the offenders and that the employer had the legal duty to provide a safe workplace. Defendant still failed to act, leaving the harassment and unsafe conditions unchanged.

57. Shortly after Plaintiff's repeated complaints—specifically in **August 2021**—Defendant caused Plaintiff to be **removed from the Consulate floors** and reassigned by ABM to a **night-shift position elsewhere in the building**, isolating her from co-workers and reducing her status and opportunities.

58. The reassignment had **no legitimate business justification** and occurred soon after Plaintiff's protected reports, demonstrating a clear **causal connection** between her complaints and the adverse action.

59. **On December 2, 2024**, Plaintiff filed the present federal action (**Case No. 24-CV-09178**) against the **Government of Canada**, acting through its **Consulate General in New York**, concerning harassment and discrimination that occurred on the Consulate floors. The separate case against **ABM Industries Inc., RXR Realty LLC, and SEIU Local 32BJ** (**Case No. 24-CV-5599**) had already been filed and was pending at that time. Shortly thereafter—on **December 19, 2024**—Plaintiff was **terminated by ABM and RXR**, continuing the same retaliatory pattern that began with her removal from the Consulate floors

and occurring immediately after the Consulate, an **RXR tenant**, was formally named as a defendant in this federal action.

60. Defendant's retaliatory conduct occurred **within the United States** and arose from its **commercial supervision and management of personnel** at 237 Park Avenue; it therefore falls within the **commercial-activity exception of FSIA § 1605(a)(2)** and is not protected by sovereign immunity.

61. By engaging in this conduct, Defendant violated **Title VII, 42 U.S.C. § 2000e-3(a)**, and **N.Y. Exec. Law § 296(7)**, which prohibit retaliation against employees for opposing discrimination.

62. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered **economic losses** (lost wages and benefits), **emotional distress** (humiliation, anxiety, and loss of sleep), and **damage to her professional reputation and career prospects.**

## COUNT III — NATIONAL ORIGIN DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

*(Title VII of the Civil Rights Act of 1964; N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107 — FSIA Commercial-Activity Exception, 28 U.S.C. § 1605(a)(2))*

63. Plaintiff repeats and realleges paragraphs 1 through 62 as if fully set forth herein.

64. This claim is brought **solely against the Government of Canada, acting through its Consulate General in New York, NY.** References to ABM Industries Inc., RXR Realty LLC, or SEIU Local 32BJ appear only as background to show the environment within the Consulate's supervision. The Consulate itself **participated in, tolerated, and benefited** from the discrimination described below and is directly responsible for these unlawful acts.

65. Plaintiff is a **Bulgarian-born woman.** Throughout her employment on the Consulate floors, coworkers and Consulate-related personnel **mocked or misidentified** her as "the Russian woman" and made remarks such as "Russia versus the West." Plaintiff clarified that she is Bulgarian, yet the comments persisted and created a sense of humiliation and isolation based on perceived national origin.

66. At the same time, Plaintiff's **ABM/RXR supervisor Mirsada Damms,** who was **Albanian-speaking,** openly expressed a preference for **"Albanian-speaking employees."** After Plaintiff reported harassment and refused personal requests from that supervisor, Plaintiff was **removed from the Consulate floors** and replaced with workers of Albanian-speaking employees —including **Hana Nikci**, **Sofija Duracovic** (the supervisor's cousin's wife), and a **substitute employee – Mejreme Koka** of the same background.

67. The **union delegate**, **Arjeta Rama**, who was also Albanian-speaking, supported the supervisor's actions and discouraged Plaintiff's complaints. As a result, the workforce assigned to the Consulate floors consisted almost entirely of **Albanian-speaking employees** sharing the same national and cultural background, while Plaintiff—who was not part of that group—was excluded and replaced.

68. **Lack of Diversity and Cultural Exclusivity.** The Consulate-assigned cleaning staff **lacked diversity** and operated as a closed group bound by language and culture. Plaintiff was isolated from normal communication and opportunities, and her exclusion was apparent to the **Government of Canada, acting through its Consulate General in New York**, which observed and accepted this staffing pattern. By permitting such conditions, the Consulate **ratified a discriminatory environment** based on national origin.

69. Consulate managers—including **Lindsay Burleson, Raphael Vibar, Patricia Brown,** and **Audrey Farnsworth**—exercised direct supervision and control over Plaintiff's work. After receiving her written and verbal reports of favoritism and harassment, they **failed to investigate or correct** the situation and instead approved or tolerated Plaintiff's removal. By doing so, the Consulate **joined in and benefited** from ABM and RXR's discriminatory and retaliatory actions.

70. The conduct described above created a **hostile work environment** in which Plaintiff was ridiculed, isolated, and removed because of her national origin and perceived national origin. The discrimination was severe, pervasive, and humiliating, altering the conditions of employment and causing emotional and economic harm.

71. Defendant's acts and omissions occurred **within the United States** in the course of its **commercial operation and supervision of personnel** at 237 Park Avenue and therefore fall within the **commercial-activity exception to sovereign immunity** under 28 U.S.C. § 1605(a)(2).

72. By **participating in, permitting, and ratifying** the discrimination and hostile environment described above, Defendant **violated**:

(a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a);

(b) the New York State Human Rights Law, N.Y. Exec. Law § 296(1); and

(c) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a).

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered **emotional distress, humiliation, loss of dignity, and economic damages,** including lost wages, benefits, and career opportunities, for which she seeks compensatory and equitable relief, together with pre- and post-judgment interest and costs as permitted by law.

## COUNT IV — NEGLIGENT SUPERVISION AND RETENTION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

*(Foreign Sovereign Immunities Act Tort Exception, 28 U.S.C. § 1605(a)(5))*

74. Plaintiff repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

75. At all relevant times Defendant owed Plaintiff a **duty of reasonable care** to provide a workplace that was safe and free from foreseeable harassment. That duty included proper supervision of employees and visitors within the Consulate premises and enforcement of closure and privacy procedures during restroom cleaning.

76. Defendant **knew or should have known**—through Plaintiff's repeated written and verbal complaints to **Property Manager Lindsay Burleson**, **Assistant Manager Raphael Vibar**, **HR Director Audrey Farnsworth**, and **Counselor Patricia Brown**—that male employees and visitors were entering and using the men's restrooms while Plaintiff was cleaning, ignoring "Closed for Cleaning / Do Not Enter" signage and a blocked doorway.

77. **Patricia Brown** personally observed the conditions on numerous occasions, asked whether the problem had been solved, and remarked "Oh, this is no good," yet the Consulate took no corrective action to prevent further incidents or to protect Plaintiff.

78. Despite this notice, Defendant **failed to supervise, train, or discipline** personnel; failed to install locks or escorts; and failed to adopt even minimal procedures to prevent recurrence. These omissions breached Defendant's duty of care and directly caused Plaintiff's injury.

79. Defendant's failure to act was **operational, not discretionary**—involving day-to-day management of premises and staff—and therefore falls within the **FSIA tort exception**, 28

U.S.C. § 1605(a)(5). These claims do not arise from misrepresentation or deceit and are not barred by the exclusions in § 1605(a)(5).

80. Separately and in the alternative, the repeated acts described herein—including men urinating **next to Plaintiff, separated only by a thin partition**, and a diplomat saying *"You can stay with me, no problem"* while she was cleaning—were **extreme and outrageous** and carried out **intentionally or with reckless disregard** for the certainty of causing severe emotional distress.

81. The cumulative effect of Defendant's conduct constituted **Intentional Infliction of Emotional Distress** under New York law. Plaintiff experienced humiliation, fear, anxiety, physical contamination, and loss of dignity requiring medical attention and resulting in continuing trauma.

82. All acts and omissions alleged in this Count occurred **within the United States**, inside a privately leased commercial building, and are not based on the performance of sovereign or discretionary functions.

83. As a direct and proximate result of Defendant's negligence and intentional misconduct, Plaintiff suffered **severe emotional distress, humiliation, medical expenses, loss of income, and diminished quality of life**.

84. All allegations in this Count are asserted **solely against the Government of Canada, acting through its Consulate General in New York**, and not against ABM Industries Inc., RXR Realty LLC, or SEIU Local 32BJ, which are defendants in a separate federal action (No. 24-CV-5599).

## COUNT V — GENDER / SEX DISCRIMINATION AND UNEQUAL TREATMENT

*(Title VII of the Civil Rights Act of 1964; N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107 — FSIA Commercial-Activity Exception 28 U.S.C. § 1605(a)(2))*

85. Plaintiff repeats and alleges paragraphs 1 through 84 as if fully set forth herein.

86. Plaintiff is a woman who, between 2019 and 2021, worked on the Consulate floors performing custodial duties under daily supervision of Consulate managers Lindsay Burleson and Raphael Vibar. Although ABM processed payroll, these managers assigned Plaintiff's work, inspected it, and had authority to approve or reject performance, making the Consulate a **joint employer** for purposes of Title VII and the NYSHRL.

87. During this period Plaintiff was subjected to **unequal and gender-based treatment** by her ABM/RXR supervisor *Mirsada Damms.* Damms openly stated that male worker *John Martey* "could come late because he is a man," while assigning Plaintiff his unfinished tasks without extra pay. For nearly two years Plaintiff performed not only her own duties but also the utility work normally handled by male staff—scrubbing floors, shampooing carpets, carrying heavy trash bags, and other labor-intensive jobs. When Plaintiff objected, Damms replied that doing the extra work "saved money for the Consulate."

88. The **cleaning crew** on the Consulate floors consisted of **one male and two female employees, including Plaintiff.** Despite this small mixed staff, the male worker was given leniency and lighter tasks, while Plaintiff was burdened with the heaviest work and disciplined for raising concerns. The supervisor's remark that the male employee "could come late because he is a man," together with the pattern of unequal assignments, shows a **gender-based double standard** that punished Plaintiff for being a woman.

89. In addition, Damms withheld Plaintiff's sick and vacation pay and punished her for refusing inappropriate personal requests such as neck massages and hair-braiding. When Plaintiff protested and reported these actions to **Consulate management, ABM Industries Inc., RXR Realty LLC**, and **SEIU Local 32BJ, none of them took any steps to protect her or to correct the unequal and abusive treatment she was facing.**

90. Consulate managers Burleson and Vibar **observed and accepted** the unequal treatment and extra work given to Plaintiff. By allowing a supervisor to treat a female employee as less valuable and to use gender stereotypes to justify unequal workloads, the Consulate **ratified sex discrimination** within its premises.

91. This discrimination was severe, repetitive, and humiliating. It created a workplace in which Plaintiff was made to feel guilty and ashamed for being a woman and for asserting her right to equal treatment. **No woman should be made to feel punished for her gender or for standing up against unfairness.**

92. The Government of Canada, acting through its Consulate General in New York, is liable under **Title VII, 42 U.S.C. § 2000e-2(a);** the **New York State Human Rights Law, N.Y. Exec. Law § 296(1);** and the **New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a),** for permitting, endorsing, and benefiting from this gender-based discrimination and unequal treatment.

93. All acts occurred within the United States as part of Defendant's **commercial operation and supervision of premises and personnel** at 237 Park Avenue and therefore fall within the **commercial-activity exception to sovereign immunity** under 28 U.S.C. § 1605(a)(2).

94. As a direct and proximate result of Defendant's actions and inactions, Plaintiff suffered **emotional distress, humiliation, loss of income and benefits, and damage to her career**

**and personal dignity,** for which she seeks compensatory and equitable relief together with pre- and post-judgment interest and costs as permitted by law.

95. The cumulative effect of these acts was to **punish Plaintiff for being a woman**, to extract uncompensated labor under humiliating conditions, and to reinforce a gender hierarchy that the Consulate's management observed and condoned.

96. All allegations in this Count are asserted **solely against the Government of Canada, acting through its Consulate General in New York**, and not against ABM Industries Inc., RXR Realty LLC, or SEIU Local 32BJ, which are defendants in a separate action (No. 24-CV-5599).

## COUNT VI — SEX / GENDER DISCRIMINATION AND RETALIATION (NEW YORK CITY HUMAN RIGHTS LAW)

97. Plaintiff repeats and realleges paragraphs 1 through 96 as if fully set forth herein.

98. Plaintiff was treated less well than male coworkers because of sex and for complaining about discrimination.

99. Defendant's conduct, occurring within New York City, constitutes commercial activity under 28 U.S.C. § 1605(a)(2) and violates N.Y.C. Admin. Code § 8-107(1)(a) and (7).

100. Plaintiff seeks compensatory, declaratory, equitable relief, and pre- and post-judgment interest, plus costs.

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff **Sevginar Kerim**, respectfully requests that this Honorable Court

enter judgment in her favor and against the **Government of Canada**, acting through its

Consulate General in New York, and grant the following relief:

### 1. DECLARATORY RELIEF

A declaration pursuant to 28 U.S.C. §§ 2201–2202 that Defendant's actions and

omissions violated Title VII of the Civil Rights Act of 1964, the New York State Human

Rights Law, and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 and

1605(a)(2) & (5), by engaging in discrimination, sexual harassment, and retaliation

occurring within the United States.

### 2. COMPENSATORY DAMAGES

An award of compensatory damages for emotional distress, humiliation, anxiety, and

mental anguish; physical contamination and resulting medical costs; loss of dignity and

personal security; and loss of income, vacation, and sick-time benefits, in an amount to

be determined by the Court or jury.

### 3. ECONOMIC AND EQUITABLE RELIEF

An award of back pay, front pay, and other equitable remedies necessary to restore

Plaintiff to the position she would have occupied but for Defendant's unlawful conduct,

including correction of employment records to reflect proper pay, status, and

classification for all additional work performed.

### 4. INJUNCTIVE RELIEF

An injunction directing Defendant to adopt, implement, and enforce comprehensive

nondiscriminatory employment practices, training programs, and protective measures for

all employees and contractors assigned to its New York premises, with compliance monitoring by the Court as appropriate.

### 5. PRE- AND POST-JUDGMENT INTEREST

Pre- and post-judgment interest as allowed by law under 28 U.S.C. § 1961.

### 6. ATTORNEY'S FEES AND COSTS

An award of reasonable litigation expenses, filing fees, expert-witness fees, and—if later represented—attorney's fees pursuant to 42 U.S.C. § 2000e-5(k) and N.Y. Exec. Law § 297(10).

### 7. SUCH OTHER AND FURTHER RELIEF

As the Court deems just and proper in the interests of justice.

## NOTE REGARDING REFERENCED EXHIBITS:

Plaintiff references certain documents identified as Exhibits C1 through C31 and related materials for clarity and context. These exhibits are not attached to this Amended Verified Complaint because their purpose is evidentiary. Plaintiff maintains the originals of each referenced document and will provide copies to the Defendant and the Court during discovery or upon the Court's request. All referenced exhibits will be properly authenticated and submitted in accordance with the Federal Rules of Evidence when required.

The documents referenced as exhibits are not newly created; they existed prior to this federal action and were previously filed or submitted as part of Plaintiff's administrative complaints, correspondence, and supporting materials before the New York State Division of Human Rights (NYSDHR), the Equal Employment Opportunity Commission (EEOC), and other relevant agencies. They are preserved in their original form and remain available for inspection or production when the Court directs.

**VERIFICATION UNDER 28 U.S.C. § 1746**

I, **Sevginar Kerim**, declare under penalty of perjury under the laws of the United States of America that the foregoing statements contained in this Amended Verified Complaint, including all attached exhibits, are true and correct to the best of my knowledge, information, and belief.

Dated: October _30_ 2025

       Brooklyn, New York

Respectfully submitted,

*Sevginar Kerim*

**Sevginar Kerim**
Plaintiff Pro Se
390 Ocean Parkway, Apt. 1C
Brooklyn, NY 11218
Tel: (917) 715-7093